J. W. SPENCE, doing business as Geff Seed and Grain Co., Plaintiff-Appellee,

v.

The BALTIMORE & OHIO RAILROAD COMPANY, a corporation, Defendant-Appellant.

No. 15489.

United States Court of Appeals Seventh Circuit.

May 18, 1966.

Rehearing Denied June 15, 1966.

Hugh J. Graham, III, Graham & Graham, Springfield, Ill., for appellant.

Leonard S. Goodman, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., Robert W. Ginnane, General Counsel, Interstate Commerce Commission, Washington, D. C., amicus curiae.

Gerald T. Quindry, Fairfield, Ill., Leslie N. Jones, Flora, Ill., Marshall, Feiger, Robison & Quindry, Fairfield, Ill., Leslie N. Jones, Flora, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge:

This appeal has been taken from temporary restraining order and temporary injunction order of the United States District Court directing the defendant, The Baltimore & Ohio Railroad Company, to provide the plaintiff, J. W. Spence, doing business as Geff Seed and Grain Co., with sufficient, but not less than eight, boxcars daily for hauling soybeans from plaintiff's elevator at Geff, Illinois.

In his complaint, the plaintiff alleged that the defendant was discriminating against the plaintiff in failing to provide plaintiff with sufficient cars for timely removal of the perishable grains in plaintiff's elevator to the plaintiff's irreparable loss through deterioration of overlong stored produce, inability to meet customary delivery dates, or to accept new grain offered for storage by plaintiff's customers.

The temporary restraining order was issued October 13, 1965, without notice or hearing. On October 18, 1965, the defendant moved to dissolve the temporary restraining order for want of jurisdiction in the U. S. District Court. A hearing was held at which evidence was adduced that plaintiff's elevator bins were filled to capacity, so that he had to refuse tenders of additional produce for storage; that the stored soybeans would lose value unless removed; that plaintiff's elevator has been receiving steadily poorer service from defendant over the past fifteen years primarily because of failure by defendant to replace worn out cars, about 1000 damaged or otherwise obsolete boxcars having accumulated unrepaired over the years at Flora, Illinois, with about 600 junked in this territory in the past few years; that the elevator in which plaintiff has invested about $200,000 is now of doubtful value; that the defendant does not have enough cars to meet the demands of the plaintiff and those of the other 53 elevators located on the lines of the defendant railroad between Cincinnati, Ohio, St. Louis, Missouri, Beardstown, Illinois, and Shawneetown, Illinois.

The District Judge found that:

5. Defendant's failure and refusal to furnish said cars for loading and transportation results from the failure and refusal of defendant to repair the cars belonging to it available and appropriate for the purpose of transportation of said soybeans; the cars belonging to defendant available and appropriate for such purpose have deteriorated to the point where they are no longer appropriate for the purpose of defendant; and defendant has failed and refused, and continues to fail and refuse to either: (a) repair said cars and make them appropriate for said purpose, or (b) to acquire other cars for that purpose.

* * * * * *

8. Defendant's testimony in open court discloses that in the territory here involved (i. e., the St. Louis Division of said defendant), approximately 1,000 boxcars appropriate for the

purpose herein described, have deteriorated to the extent that they are no longer usable for such purposes. It further shows that defendant has neither made any repairs to said cars to render them usable, nor has it acquired other appropriate cars in lieu thereof. Such testimony discloses no plan or program of the defendant either to repair said cars or to acquire others. As a consequence, the ability of defendant to discharge its obligation to furnish adequate transportation is critically impaired, and will continue further to decline.

The District Court concluded that:

3. It is the duty of defendant to provide safe and adequate transportation to plaintiff upon reasonable notice, and defendant is not excused from that obligation by failing and refusing to repair its cars appropriate thereto, or failing and refusing to acquire and furnish other cars in lieu thereof.

4. Plaintiff, as a matter of law, is entitled to the Preliminary Injunction prayed for under the facts alleged to in the verified Complaint, the verified Motion for Preliminary Injunction, and testimony heard in open court.

An Order for Preliminary Injunction issued November 1, 1965, directing defendant as follows:

That you forthwith furnish Plaintiff with sufficient boxcars, at his Elevator at Geff, Illinois, of a type to properly haul soy beans and protect same against rain and inclement weather, to remove all soy beans now located in Plaintiff's Elevator at Geff, Illinois, together with all soy beans purchased by him in due course of business and offered for shipment while the soy beans in the Elevator are being removed, said boxcars to be furnished at the rate of not less than eight (8) daily; unless a lesser number is requested by Plaintiff, and to remove the filled cars the next time Defendant's train makes a trip past Plaintiff's Elevator and not later than the following day and to replace the filled cars on Plaintiff's railroad siding with empty cars. That you instanter cease failing and refusing to furnish Plaintiff a sufficient amount of boxcars of a type proper to haul soy beans and protect same against rain and inclement weather, to remove all soy beans now located in his Elevator at Geff, Illinois, together with all soy beans purchased by him in due course of business and offered for shipment while the soy beans in the Elevator are being removed, and to cease instanter to fail, refuse and neglect to furnish Plaintiff at his Elevator at Geff, Illinois, said boxcars at the rate of not less than eight (8) daily, unless a lesser number is requested by Plaintiff, and to remove the filled cars the next time Defendant's train makes a trip past Plaintiff's Elevator and not later than the following day and to replace the filled cars on Plaintiff's railroad siding with empty cars, until such time as Plaintiff's said Elevator shall be emptied.

There was no finding of discrimination. Plaintiff asserts in this Court that he is not relying on any discrimination to support his claim to mandatory injunction.

Plaintiff's theory is that he is entitled to railroad service under the provisions of the Interstate Commerce Act, and that jurisdiction to enforce plaintiff's right rests in the U. S. District Court under § 23 of that Act (Title 49 U.S.C.)[1] and un-

1. § 23. Mandamus to obtain equal facilities for shippers

The district courts of the United States shall have jurisdiction upon the relation of any person or persons, firm, or corporation, alleging such violation by a common carrier, of any of the provisions of this chapter and chapters 8, 12, and 13 of this title, as prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged, or upon terms or conditions as favorable as those given by said common carrier for like traffic under similar conditions to any other shipper, to issue a writ or writs of mandamus against said common carrier, commanding such common carrier to move and transport the traffic, or to furnish cars or other facilities for transportation for the party

der Title 28 U.S.C. § 1337 [2]; that the Interstate Commerce Commission would have original jurisdiction only where the plaintiff sought to secure a preference over other shippers or to cure discrimination against him.

The Interstate Commerce Commission was not a party to the proceedings in the District Court. The Orders there were entered without prior reference of the matter to the Commission. In this Court, the Commission has filed a brief as Amicus Curiae.

Plaintiff contends that it was proper for him to secure relief in the U. S. District Court because he is not asking that Court to fix the method whereby the defendant shall acquire the facilities to provide the service ordered, that such means may well be a matter exclusively for the Interstate Commerce Commission and the defendant railroad, but that it was within the jurisdiction of the District Court to order the end result; that defendant is entitled to a reasonable period of time to secure such equipment as it may now lack to provide the directed service to plaintiff and that for such limited reasonable time, the defendant is purged of contempt of the District Court's Orders.

As the Interstate Commerce Commission does not now assert the authority to direct a railroad to acquire more boxcars, plaintiff feels that the United States District Court must be empowered to do just that.

We agree with the Commission that in this case the District Court engaged in an administrative investigation of the available cars in the territory, found that the defendant railroad had a number of obsolete cars on hand and enjoined the defendant railroad for failing to supply the cars requested by one particular shipper, the plaintiff.

Section 23 grants authority to the District Court under certain circumstances to enter orders in the nature of mandamus to compel a carrier to grant as many cars to one shipper as to another similarly situated shipper, but the District Court found no such discrimination here, and plaintiff concedes that such discrimination does not exist here.

Under similar circumstances, in B. & O. RR. v. United States ex rel. Pitcairn Coal Co., 1910, 215 U.S. 481, 493, 30 S. Ct. 164, 169, 54 L.Ed. 292, the Supreme Court saw "no escape from the conclusion that the grievances complained of were primarily within the administrative competency of the Interstate Commerce Commission, and not subject to be judicially enforced; at least, until that body, * * * had been afforded, by a complaint made to it, the opportunity to exert its administrative functions."

In this case we have an issue to be decided by the Commission: the reasonableness of the defendant's method of car distribution for seasonal loading during a car shortage. The case thus differs from the situations involved in such cases as Pennsylvania R. Co. v. Sonman Shaft Coal Co., 1916, 242 U.S. 120, 124, 37 S. Ct. 46, 48, 61 L.Ed. 188, for example, where the parties agreed that the shipper made a reasonable demand and there was an unexplained failure to supply cars in confessedly normal conditions, leaving no administrative question for the Interstate Commerce Commission to solve.

applying for the writ: *Provided,* That if any question of fact as to the proper compensation to the common carrier for the service to be enforced by the writ is raised by the pleadings, the writ of peremptory mandamus may issue, notwithstanding such question of fact is undetermined, upon such terms as to security, payment of money into the court, or otherwise, as the court may think proper, pending the determination of the question of fact: *Provided,* That the remedy given by writ of mandamus shall be cumula-

tive, and shall not be held to exclude or interfere with other remedies provided by this chapter and chapters 8, 12, and 13 of this title.

2. § 1337. Commerce and anti-trust regulations
The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

The Orders of the District Court compelling the defendant to furnish the plaintiff with a specified number of cars may create that very discrimination which the Commission must strive to avoid with the aid of its Bureau of Railroad Safety & Service which acts as a clearing house to ascertain the needs of shippers and the availability of cars by the respective carriers. The car shortage on the B. & O. is a symptom of a national problem now the subject of a full-scale investigation by the Commission.

Currently Service Order 973, 31 F.R. 1303, provides:

*It appearing,* That in the opinion of the Commission there exists a shortage of equipment, particularly of plain boxcars, in certain sections of the country of such a nature as to create an emergency requiring immediate action; that existing carrier rules, regulations, and practices with respect to the use, supply, control, movement, distribution, exchange, interchange, and return of cars to the railroads owning such cars are ineffective; that car service will be promoted in the interest of the public through the issuance of car distribution directions for the location or relocation of empty cars; that notice and public procedure are impractical and contrary to the public interest under the circumstances; and that good cause therefor exists for the entry of this order upon less than 30 days' notice:

*It is ordered,* That:

§ 95.973 *APPOINTMENT OF AGENTS*

(a) R. D. Pfahler, Director and H. R. Longhurst, Assistant Director, Bureau of Railroad Safety and Service, Interstate Commerce Commission, Washington, D.C., and each of them are hereby appointed Agents of the Interstate Commerce Commission and vested with authority to issue Car Distribution Directions with respect to the location and relocation of empty cars, and to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers by railroads as in their opinion will best promote the service in the interest of the public and the commerce of the people.

(b) *Rules, Regulations, and Practices Suspended.* The operation of all rules, regulations, and practices insofar as they conflict with the provisions of this order, is hereby suspended.

We conclude that the U. S. District Court lacked jurisdiction to enter the Orders from which appeal has been taken. The Decision of the District Court is accordingly reversed and this cause is remanded to dissolve the temporary restraining order and the temporary injunction heretofore entered herein.

Reversed and remanded.